RECEIVED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2010 AUG 12 P 5: 24

HACKETT, CLK
U.S. DISTRICT CT.A

| | |
|---|---|
| STATE OF ALABAMA<br>*ex rel.* Troy King, Attorney General, | ) )<br>) |
| **Plaintiff,** | )<br>) |
| | **CASE NO. CV- 2:10-cv-691-MHT-CSC** |
| **vs.** | )<br>) |
| **TRANSOCEAN, LTD.; TRANSOCEAN** | ) |
| **OFFSHORE DEEPWATER DRILLING, INC.;** | ) |
| **TRANSOCEAN DEEPWATER, INC.;** | ) |
| **ANADARKO PETROLEUM CORPORATION;** | ) **JURY DEMAND** |
| **ANADARKO E&P COMPANY, LP; MITSUI &** | ) |
| **CO. (U.S.A.); MOEX OFFSHORE 2007, LLC;** | ) |
| **HALLIBURTON ENERGY SERVICES, INC.;** | ) |
| **CAMERON INTERNATIONAL CORPORATION** | ) |
| **f/k/a COOPER CAMERON CORPORATION; and** | ) |
| **M-I, L.L.C.** | ) )<br>) |
| **Defendants.** | )<br>) |

## COMPLAINT

### INTRODUCTION

The State of Alabama, by and through its Attorney General, brings this action against the

defendants identified below ("Defendants") and avers as follows:

1.     This action is brought in response to the catastrophic oil disaster that resulted

from the explosion on, fire aboard, and subsequent sinking of the Mobile Offshore Drilling Unit

*Deepwater Horizon* ("*Deepwater Horizon*" or "Oil Rig") on April 20, 2010 at about 10:00 p.m.

central time in the Gulf of Mexico.  The Oil Rig had been drilling for oil via a well located on the

Macondo Prospect Mississippi Canyon 252 ("MC252" or the "Oil Well") approximately 100

miles from the Alabama coast.  The Oil Rig burned for two days before sinking into the ocean,

resulting in the bending and breaking of a riser pipe carrying oil to the ocean surface from approximately 5,000 feet below the sea floor. For approximately 87 days following the explosion on the *Deepwater Horizon*, an estimated 35,000 to 60,000 barrels per day of crude oil were released from the sinking rig and Oil Well. The oil and the dispersants used to clean the disaster made their way into the waters and onto the land of the State of Alabama. This unprecedented environmental disaster, the largest marine oil release in the history of the United States, has caused and will continue to cause extensive economic, environmental, and other damage to the State of Alabama, including but not limited to Dauphin Island, the Port of Mobile, Weeks Bay, Gulf State Park, and the beaches of Baldwin and Mobile Counties.

## JURISDICTION AND VENUE

2.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331; 33 U.S.C. § 2717; and 28 U.S.C. §1332(a)(1) as there is diversity of citizenship and the amount in controversy exceeds $75,000.

3.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) (2) & (3), 28 U.S.C. §1391(c)(1), and 33 U.S.C. § 2717.

## PARTIES

### Plaintiff

4.      Plaintiff is the State of Alabama, one of the sovereign states of the United States of America (hereinafter sometimes described as "Alabama" or the "State"), as well as all appropriate States agencies, departments, and all political subdivisions thereof.

5.      The Attorney General, as chief law officer of the State of Alabama pursuant to Ala. Code § 36-15-12, is statutorily authorized to initiate and maintain this action.

**Defendants**

6.      Transocean Ltd. is a Swiss corporation doing business in Alabama. Transocean, Ltd. is the world's largest offshore drilling contractor and leading provider of drilling management services worldwide.

7.      Transocean Offshore Deepwater Drilling, Inc. is a Delaware corporation with its principal place of business in Houston, Texas, but doing business in Alabama. All allegations and claims asserted herein against Defendant Transocean Ltd. are incorporated by reference against Transocean Offshore Deepwater Drilling, Inc.

8.      Transocean Deepwater, Inc. is a Delaware corporation with its principal place of business in Houston, Texas, but doing business Alabama. All allegations and claims asserted herein against Defendant Transocean Ltd. are incorporated by reference against Transocean Deepwater, Inc.

9.      Defendants Transocean Offshore Deepwater Drilling, Inc. and Transocean Deepwater, Inc. are wholly owned subsidiaries of the global parent corporation, Transocean Ltd., and they shall be referred to herein collectively as "Transocean."

10.     Anadarko Petroleum Corporation is a Delaware corporation with its principal place of business in The Woodlands, Texas, but doing business in Alabama and within this district.

11.     Anadarko E&P Company LP is a Delaware corporation with its principal place of business in The Woodlands, Texas, but doing business in Alabama and within this district.

12.     Defendant  Mitsui & Co. (U.S.A.) is a New York corporation with its principal place of business in New York, New York, but doing business in Alabama and within this district.

13.     MOEX Offshore 2007, LLC is a Delaware corporation with its principal place of business in Houston, Texas, but is doing business in Alabama.

14.     Halliburton Energy Services, Inc. ("Halliburton") is a Delaware corporation with its principal place in Duncan, Oklahoma but doing business in Alabama and within this district. Halliburton is one of the world's largest providers of products and services to the energy industry and was engaged in cementing operations of the Oil Well and well cap and, upon information and belief, improperly and negligently performed these duties, increasing pressure at the Oil Well and causing and/or contributing to the fire, explosion, and resulting oil disaster.

15.     Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron"), is a Delaware corporation with its principal place of business in Houston, Texas, but doing business in the Alabama and within this district. Cameron is a global provider of pressure control, processing, flow control and compression systems as well as project management and aftermarket services for the oil and gas and process industries. Cameron manufactured and/or supplied the *Deepwater Horizon's* blowout preventer valves ("BOP") that failed to activate at the time of the explosion, which should have prevented the oil disaster. Upon information and belief, the BOP's were defective because they failed to operate as intended, among other reasons. As such, Cameron is liable to Plaintiff for supplying this defective product in addition to being liable for its negligence.

16.     M-I, L.L.C. is a Texas corporation with its principal place of business in Houston, Texas, but doing business in the State of Alabama and within this district. M-I, also known as M-I SWACO, supplies drilling and completion fluids and additives to oil and gas companies, providing pressure control, rig instrumentation, and drilling waste management products and services. M-I provided the drilling fluids for the *Deepwater Horizon* at the time of the explosion.

## FACTUAL ALLEGATIONS

### The *Deepwater Horizon* Explosion and Subsequent Oil Disaster

17.     BP is the holder of a lease granted by the Minerals Management Service allowing BP to drill for oil and perform oil-production-related operations at Macondo prospect MC252, and on April 20, 2010, operated the Oil Well at MC252 that is the source of the largest marine oil disaster in history of the United States.  Upon information and belief, at all times relevant to this Complaint, BP was authorized to conduct offshore drilling operations using the semi-submersible drilling rig *Deepwater Horizon* at MC252 in the Gulf of Mexico.

18.     The *Deepwater Horizon* was an ultra-deepwater dynamic positioned semi-submersible oil rig built in 2001.  Transocean, or its predecessors, designed the *Deepwater Horizon*.  At all times material hereto, the *Deepwater Horizon* was owned, manned, possessed, managed, controlled, chartered, and/or operated by Transocean and/or BP.

19.     From April 20 through April 22, 2010, the *Deepwater Horizon* exploded, burned, and sank into the Gulf of Mexico within approximately 100 miles of the Alabama coast.  The explosion occurred during the course of cementing work being performed to create a cement seal to plug the Oil Well as part of the final phases of converting the Oil Well from an exploratory well into a production well.  Cementing is delicate work that carries with it a risk of a blowout, or the uncontrolled release of oil from the well.  It is believed the explosion on the *Deepwater Horizon* was a blowout related to the cementing work.  However, an investigation is still ongoing, and there may be other causes of the disaster that are not yet ascertainable by the Plaintiff.

20.     As the *Deepwater Horizon* sank, it broke off the long riser pipe carrying oil to the surface of the seafloor, leaving the pipe gushing oil out of its open end as well as through two

breaks along its length. Although the wellhead was equipped with an emergency blowout preventer valve designed to seal off the well in the event of a sudden pressure release exactly like the one that occurred during the *Deepwater Horizon* blowout, the BOP failed to activate and seal the wellhead as it should have, leaving the wellhead spewing oil into the ocean at a rate of up to 2.5 million gallons of oil per day—a rate that is equal to the *Exxon Valdez* spill about every four days.

21. At the time of this filing, it is currently estimated that approximately 35,000 to 60,000 barrels of oil were released each day into the waters of the Gulf of Mexico from the Oil Rig over a period of 87 days. This oil, as well as other materials and substances including chemical dispersants used in an attempt to clean up the oil, have polluted and damaged the waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coastlines, islands, marshlands, and other natural and economic resources of the State of Alabama. Despite mobilization of private and public efforts, the oil, dispersants, and other materials and substances have not been cleaned up and continue to migrate into the waters of the State and on to the shores of the State. As a result, the oil, dispersants, and other materials and substances discharged by the Defendants into the Gulf of Mexico is currently now damaging and will continue to damage for generations to come, the waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coastlines, islands, marshlands, and other natural and economic resources of the State of Alabama.

### Defendants' Acts and Omissions

22. The fire and explosion on the *Deepwater Horizon*, its sinking and the resulting oil disaster were caused by the combined and concurring negligence or wantonness of Defendants.

23. The injuries and damages suffered by Plaintiff were caused by Defendants' negligent or wanton failure to adhere to recognized industry standards of care.

24. All Defendants knew of the dangers associated with the deep water drilling operations being conducted on the *Deepwater Horizon* and negligently and wantonly failed to take appropriate measures to prevent damage to the Plaintiff.

25. According to reports and upon information and belief, Defendants acted or failed to act in ways that greatly heightened the risk of a "blow-out" disaster and catastrophic oil release. The Defendants knew they were operating in a dangerous formation in which extra safety precautions were required, not fewer. The Defendants' conduct with respect to the *Deepwater Horizon* and Oil Well illustrates their scheme to maximize profits and ignore dangerous risks posed to human health and property. Upon information and belief, these non-exclusive examples include:

    a. Utilizing a defective well casing that was prone to fail when under heavy pressure;

    b. Failing to observe dangerous and recurring problems with highly flammable gaseous compounds, and instituting risky cementing and drilling procedures hours before the *Deepwater Horizon* explosion;

    c. Failing to institute common industry protective measures necessary to detect the buildup of highly flammable gaseous compounds before and during the cementing process;

    d. Accelerating drilling operations in an effort to save money and pressuring employees hours before the *Deepwater Horizon* explosion to drill and penetrate the continental shelf faster while ignoring risks associated with dangerous gaseous compounds in the shelf's crust;

    e. Continuing to operate the Oil Well without repairing the blowout preventer's annular after chunks of the annular had broken off and floated to the surface, thereby significantly decreasing the blowout preventers' protective measures against a blowout;

f.  Failing to disclose or correct the fact that the battery on the blowout preventer was weak and one of its control pods was broken;

g.  Consciously electing not to install an acoustically activated remote-control shut-off valve;

h.  Failing to install a deepwater valve to be placed nearly 200 feet under the sea floor; and

i.  Ordering drillers to extract drilling mud from the well before all of the concrete plugs were put into place in order to speed up the drilling process thereby creating high pressure instability in the well.

26.  According to Representative Henry Waxman (D-Calif.), BP told the House Energy and Commerce Subcommittee on Oversight that the Oil Well that exploded had failed a key pressure test hours before the April 20, 2010 explosion. "Significant pressure discrepancies were observed in at least two of these tests, which were conducted just hours before the explosion," according to Rep. Waxman, citing documents his committee received from BP. Despite these worrisome pressure readings, Waxman stated "it appears the companies did not suspend operations, and now 11 workers are dead and the Gulf faces an environmental catastrophe." Some or all of the Defendants have subsequently admitted responsibility for the oil disaster.

27.  The Defendants' initial response to the *Deepwater Horizon* disaster was lackluster and only intensified the damage. While the Defendants struggled to develop containment systems on the spot, thousands of barrels of crude oil were gushing into the Gulf of Mexico each day. On May 10, 2010, BP Chief Operating Officer Doug Suttles for the first time publicly admitted that it was woefully unprepared to mitigate the damage of the *Deepwater Horizon* disaster due to its location. Suttles stated, "There's a lot of techniques available to us. The challenge with all of them is, as you said, they haven't been done in 5,000 feet of water."

28.     Moreover, the Defendants also failed to institute proper oil disaster response plans to contain the catastrophic oil release resulting from the *Deepwater Horizon* explosion, and misrepresented their capability to safely conduct offshore drilling operations and contain oil releases that might occur in connection with such operations.  After the oil disaster began, BP Chief Executive Tony Hayward informed that it was "an entirely fair criticism" to say they had not been fully prepared for a deepwater oil disaster.  He said "What is undoubtedly true is that we did not have the tools you would want in your tool-kit."

29.     However, upon information and belief, on or about early 2009 BP submitted a paper to the Minerals Management Service in which it stated "[i]n the event of an unanticipated blowout resulting in an oil spill, it is unlikely to have an impact based on the industry wide standards for using proven equipment and technology for such responses, implementation of BP's Regional Oil Spill Response Plan which addresses available equipment and personnel, techniques for containment and recovery and removal of the oil spill."

30.     After the explosion, Defendants attempted to downplay and conceal the severity of the oil disaster.  Their original estimate of 1,000 barrels per day was found by government investigators to be a fraction of the actual amount pouring into the Gulf of Mexico each day.  The Defendants then raised their estimate to 5,000 barrels per day — which again paled in comparison to the currently estimated oil flow of 35,000 to 60,000 barrels of oil per day.  Moreover, Defendants were slow and incomplete, if not dishonest, in their announcements and warnings to the State of Alabama and its citizens and businesses.

31.     The Defendants were negligent and wanton in their attempts to clean-up oil gushed into and onto Alabama's waters and shores, including but not limited to, Defendants' choice of a highly toxic chemical used to disperse the oil in the ocean.

## Damages to the State of Alabama

32.     Defendants have yet to clean up the millions of gallons of oil, dispersants, and other materials and substances discharged into and onto the waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coastlines, islands, marshlands, and other natural and economic resources of the State of Alabama, and the ultimate amount of damages incurred by the State of Alabama as a result of the *Deepwater Horizon* oil disaster is not yet ascertainable and shall be established according to the proof presented at the trial of this matter.   However, damages incurred to date include, but are not limited to the following:

       a.  Past, present, and future harm to and contamination of waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coastlines, islands, marshlands, and other natural and economic resources;

       b.  Past, present, and future physical injury to and destruction of State resources and property, located in around the Gulf of Mexico and adjoining waters and estuaries, including but not limited to, Dauphin Island, the Port of Mobile, Weeks Bay, Gulf State Park, and the beaches of Baldwin and Mobile Counties;

       c.  Past, present, and future economic losses resulting from injury to or destruction of State property;

       d.  Past, present, and future lost State revenues from taxes, royalties, rents, fees, or net profit shares;

       e.  Past, present, and future costs expended by the State for removing or cleaning contaminated State waters and land;

       f.  Past, present, and future costs expended by the State for providing increased or additional public services to address the oil disaster and protect human health and the environment; and

       g.  Past, present, and future damages associated with the long-term stigma of the oil disaster, including the loss of use of State property, taxes, revenues, and other income.

33.     The State reserves the right to amend this Complaint once additional information regarding the full extent of the State's damages becomes available.

## FIRST CAUSE OF ACTION
## (Negligence, Gross Negligence, and/or Wantonness)

34.      The State incorporates and realleges each and every allegation set forth above herein by reference.

35.      All Defendants owed a duty to the State to exercise reasonable care with respect to the construction, operation, inspection, training of personnel, repair and maintenance of the *Deepwater Horizon* and Oil Well; with respect to the disaster's containment and prevention planning prior to the disaster; and with respect to the containment and prevention efforts following the initial oil disaster.

36.      Defendants had a heightened duty of care to the State because of the great danger and environmental concerns associated with drilling for oil in the ocean.

37.      Defendants, directly or through agents, breached their legal duties to the State by failing to exercise reasonable care and were negligent, grossly negligent and/or acted with reckless, willful, and wanton disregard for the State in the construction, operation, inspection, training of personnel, repair and maintenance of the *Deepwater Horizon* and the Oil Well, and in planning and implementing oil containment and prevention activities before and after the oil disaster.

38.      Upon information and belief, the State avers that the fire, explosion, resulting oil disaster and damages were caused by the negligence, gross negligence, recklessness, willfulness, and wantonness in the following non-exclusive particulars:

        a.  Failing to properly operate the *Deepwater Horizon* and Oil Well;

        b.  Failing to install a remote control acoustic switch to prevent the discharge of crude oil into the Gulf of Mexico;

        c.  Failing to properly inspect the *Deepwater Horizon* and Oil Well to assure that its equipment and personnel were fit for their intended purposes;

-11-

d.  Acting in a careless and negligent manner without due regard for the safety of others;

e.  Failing to promulgate, implement, follow and enforce procedures, rules and regulations pertaining to the safe operations of the *Deepwater Horizon* and Oil Well which, if they had been so promulgated, implemented, followed and enforced, would have averted the fire, explosion, sinking and oil disaster;

f.  Operating the *Deepwater Horizon* and Oil Well with untrained and/or unlicensed personnel;

g.  Inadequately and negligently training and/or hiring personnel;

h.  Failing to take appropriate action to avoid and/or mitigate the accident;

i.  Negligently implementing policies and/or procedures to safely conduct offshore operations in the Gulf of Mexico;

j.  Failing to ascertain that the *Deepwater Horizon* and Oil Well and associated equipment were free from defects and/or in proper working order;

k.  Failing to take reasonable precautions to prevent and timely warn of the failure of the Oil Well or drilling rig;

l.  Failing to timely bring the oil release under control;

m.  Failing to provide appropriate accident prevention equipment;

n.  Failing to undertake required tests and measurements of the Oil Well and to observe or respond to measuring devices that indicated excessive pressures in the Oil Well;

o.  Failing to react to danger signs of catastrophic Oil Well or drilling rig failure;

p.  Using defective BOPs that were improperly installed, maintained, and/or operated;

q.  Conducting well and well cap cementing operations improperly;

r.  Failing to prepare an adequate oil disaster response plan;

s.  Failing to marshal sufficient resources to adequately respond to the oil disaster and protect the waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coastlines, islands, marshlands, and other natural and economic resources of the State of Alabama;

  t. Failing to use BOPs appropriate for this drilling operation, and failure to test the BOPs that were used;

  u. Failing to follow plans and specifications applicable to the design and construction of the Oil Well and its components;

  v. Failing to use safety devices adequate to arrest the flow of oil in the event of catastrophic failure of the Oil Well or drilling rig;

  w. Failing to properly design the *Deepwater Horizon* and Oil Well;

  x. Concealing or misrepresenting the nature, size and extent of the oil disaster;

  y. Using dangerous chemical dispersants of an incorrect nature, type, and amount;

  z. Acting in a manner that justifies imposition of punitive damages; and

  aa. Such other acts of negligence and omissions as will be shown at the trial of this matter.

39. The Defendants were also negligent and wanton in their attempts and omissions in trying to plug the Oil Well, contain the oil, and clean-up the oil disaster on Alabama's waters and shores.

40. Defendants knew or should have known that their negligent, grossly negligent, willful, wanton and/or reckless conduct would result in the oil disaster, causing past, present, and future damages to the waters, property, tax base, estuaries, seabed, animals, plants, beaches, shorelines, coastlines, islands, marshlands, and other natural and economic resources of the State of Alabama.

41. The past, present, and future injuries to the State were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations.

42.     In addition, the fire, explosion, sinking and the resulting oil disaster would not have occurred had the Defendants exercised the high degree of care imposed on them and the State, therefore, pleads the doctrine of *res ipsa loquitur*.

43.     As a direct and proximate result of the combining and concurring negligence and wantonness of all Defendants, the State has and will continue to be damaged, including but not limited to, damages to natural resources and State properties, lost tax and other revenues, and direct and indirect costs associated with oil disaster response actions.

44.     The State demands judgment against all Defendants, jointly and severally, for compensatory and punitive damages in an amount to be determined by a struck jury.

## SECOND CAUSE OF ACTION
### (Trespass)

45.     The State incorporates and realleges each and every allegation set forth above herein by reference.

46.     Defendants' acts and omissions with respect to the explosion, fire and release of oil, dispersants, and other materials and substances have caused and continue to cause a material, substantial and unreasonable interference with the use and enjoyment of the waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coastlines, islands, marshlands, and other natural and economic resources of the State of Alabama, and have materially diminished and continue to diminish the value thereof.

47.     Defendants have trespassed and continue to trespass by allowing oil, dispersants, and other materials and substances to contaminate State property.

48.     As a direct and proximate result of Defendants' trespass, the State has suffered past, present, and future losses in the form of, but not limited to, loss of income, the creation of conditions harmful to human health and the environment, the loss of beneficial use, enjoyment,

and exclusive possession of their property, loss of tax base, and diminished value of State property, for which the State is entitled to be compensated.

49.     The State demands judgment against all Defendants, jointly and severally, for compensatory and punitive damages in an amount to be determined by a struck jury.

### THIRD CAUSE OF ACTION
### (Public Nuisance)

50.     The State incorporates and realleges each and every allegation set forth above herein by reference.

51.     Defendants' acts and omissions with respect to the release of oil, dispersants, and other materials and substances have combined to create a public nuisance that has caused and continues to cause a material, substantial and unreasonable interference with the use and enjoyment of the waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coastlines, islands, marshlands, and other natural and economic resources of the State of Alabama.

52.     As a direct and proximate result of Defendants' creation and continuing creation of a public nuisance, the State and its citizens have suffered past, present, and future losses in the form of, but not limited to, loss of income, loss of revenue for the State and a substantial increase in expenditures for the State to combat, abate, and remedy the effects of the nuisance caused by the Defendants.

53.     At all times relevant hereto, Defendants have and continue to have a duty and obligation to the State and its citizens to abate the damage, harm, and threatened harm to the State caused by Defendants' release of oil, dispersants, and other materials and substances.

54.     Such duties and obligations include determining the nature and extent of the past, present, and future harm to human, animal, and plant life, and to other natural resources caused

by the release of oil, dispersants, and other materials and substances and appropriate measures needed to abate such harm and threat of harm to the State and its citizens.

55.    Defendants have failed to perform their duties and obligations as set forth in the preceding paragraph.

56.    As a direct and proximate result of Defendant's creation and continued creation of a public nuisance and its failure to perform its duties and obligations, the State has suffered and will continue to suffer losses to pay for services to protect the public health and the environment on behalf of its citizens, for which the State is entitled to be compensated.

57.    The State demands judgment against all Defendants, jointly and severally, to take all appropriate actions to remedy and abate the harm to the environment and public health caused by the public nuisance alleged above and any other relief the court deems just and appropriate.

## FOURTH CAUSE OF ACTION
### (Private Nuisance)

58.    The State incorporates and realleges each and every allegation set forth above herein by reference.

59.    Defendants' acts and omissions with respect to the release of oil, dispersants, and other materials and substances have caused and continue to cause a material, substantial and unreasonable interference with the use and enjoyment of the waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coastlines, islands, marshlands, and other natural and economic resources of the State of Alabama, and have materially diminished and continue to diminish the value thereof.

60.    Defendants' creation and continuing creation of private nuisance proximately caused past, present, and future damages to the State by allowing oil, chemical dispersants, and other materials and substances to contaminate State property.

61.     As a direct and proximate result of Defendants' creation and continuing creation of a private nuisance, the State has suffered past, present, and future losses in the form of, but not limited to, loss of income, loss of tax base, the loss of beneficial use, enjoyment, and exclusive possession of State property, and diminished value of State properties, for which the State is entitled to be compensated.

62.     The State demands judgment against all Defendants, jointly and severally, for compensatory and punitive damages in an amount to be determined by a struck jury.

### FIFTH CAUSE OF ACTION
### (Damages Under the Federal Oil Pollution Act of 1990)

63.     The State incorporates and realleges each and every allegation set forth above herein by reference.

64.     The Federal Oil Pollution Act of 1990 imposes liability upon "each responsible party for a vessel or a facility from which oil is discharged…into or upon navigable waters or adjoining shorelines" for the "damages…that result from such incident." 33 U.S.C. § 2702.

65.     The U.S. Coast Guard has designated BP and Transocean as responsible parties under the Federal Oil Pollution Act and may designate other Defendants as responsible parties in the future.

66.     By virtue of Defendants' gross negligence or willful misconduct with respect to the acts and omissions alleged in this Complaint, all responsible parties under the Federal Oil Pollution Act have caused and are liable for the following past, present, and future expenses incurred by or damages to the State compensable under the Act pursuant to 33 U.S.C. § 2702(b):

      a.  all removal costs incurred by the State;

      b.  damages for injury to, destruction of, loss of, or loss of use of, the State's natural resources, including the reasonable costs of assessing the damage;

    c.  damages for injury to, or economic losses resulting from destruction of, real or personal property of the State;

    d.  damages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources;

    e.  damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources;

    f.  damages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by the discharge of the oil;

67.    By virtue of the acts and omissions alleged in this Complaint, Defendants are jointly and severally liable for the aforementioned damages under the Federal Oil Pollution Act.

### PRAYER FOR RELIEF

WHEREFORE, the State demands judgment against Defendants, jointly and severally as follows:

    a.  Economic and compensatory damages in amounts to be determined at trial;

    b.  Remediation costs, rehabilitation costs, and response costs;

    c.  Punitive damages;

    d.  Injunctive relief;

    e.  Pre-judgment and post-judgment interest at the maximum rate allowable by law;

    f.  Attorneys' fees and costs of litigation;

    g.  Such other and further relief available under all applicable state and federal laws and any relief the court deems just and appropriate; and

    h.  A trial by jury as to all Defendants and on all claims.

Respectfully submitted by,

_____
Troy King, Attorney General of the State of Alabama
ASB-4906-G48T
Office of the Attorney General of Alabama
500 Dexter Avenue
Montgomery, Alabama 36130
Telephone:  (334) 242-7300
Fax:  (334) 242-4891
Primary Email:      troyrking@ago.state.al.us
Secondary Email:  aharbin@ago.state.al.us

_____
Cheairs Porter, Assistant Attorney General
ASB-5916-R77C
Office of the Attorney General of Alabama
500 Dexter Avenue
Montgomery, Alabama 36130
Telephone:  (334) 353-8811
Fax:  (334) 242-2433
Primary Email:      cporter@ago.state.al.us
Secondary Email:  rwyhard@ago.state.al.us

_____
Robert Tambling, Assistant Attorney General
ASB-6026-N67R
Office of the Attorney General of Alabama
500 Dexter Avenue
Montgomery, Alabama 36130
Telephone:  (334) 353-7445
Fax:  (334) 242-2433
Primary Email:      rtambling@ago.state.al.us
Secondary Email:  lbooth@ago.state.al.us

Dated:  August 12, 2010